FILED
2026 Sep-30 PM 04:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| BERNICE THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>WEST HILL HEALTH AND REHABILITATION,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2:24-cv-00960-JHE |

**MEMORANDUM OPINION[1]**

On June 11, 2024, Plaintiff Bernice Thomas ("Thomas"), initiated this action against defendant West Hill Health & Rehabilitation[2] ("West Hill") and various fictitious defendants.[3]

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 9).

[2] In its Answer, West Hill clarifies that it was incorrectly named in the Complaint, and its correct name is Birmingham Health and Rehab, LLC. (Doc. 2). Because the Complaint and much of the record identifies Defendant as "West Hill," the undersigned will continue to refer to Defendant as "West Hill" for ease of reference. However, Defendant's correct legal name is Birmingham Health and Rehab, LLC.

[3] As for Thomas's claims against fictitious defendants A-Z and AA-JJ, "[a]s a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). A limited exception to this rule exists "when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215–16 (11th Cir. 1992)). Here, Thomas indicates in the complaint that she is unaware of the names or whereabouts of the fictitious defendants. (Doc. 1-1 ¶ 4). Additionally, Thomas never sought leave to amend her complaint to identify the real defendants at issue, and the time to do so has long passed. Therefore, the undersigned will *sua sponte* dismiss Thomas's claims against fictitious defendants A-Z and AA-JJ. *See Wiggins v. Risk Enter. Mgmt. Ltd.*, 14 F. Supp. 2d 1279, 1279 n.1 (M.D. Ala. 1998) (*sua sponte* dismissing claims against fictitious defendants); *Lawson v. Wal-Mart Stores, E., L.P.*, No. 2:17-CV-1885-VEH, 2019 WL 3790214, at *1 n.1 (N.D. Ala. Aug. 9, 2019) (collecting cases for the proposition that fictitious parties should be dismissed after discovery closes and the time to amend the complaint has expired).

(Doc. 1-1). Thomas asserts claims of negligence and wantonness against West Hill arising from a fall Thomas suffered on June 11, 2022. (Doc. 1-1 at ¶¶ 15–33). She asserts claims of negligence and wantonness against fictitious defendants as well. (Doc. 1-1 at ¶¶ 34–45). West Hill removed this action from the Circuit Court of Jefferson County, Alabama, on July 17, 2024. (Doc. 1).

West Hill moved for summary judgment on October 20, 2025. (Doc. 15). The undersigned entered a briefing schedule allowing Thomas to respond to the motion by November 10, 2025, and allowing West Hill to file a reply by November 24, 2025. (Doc. 17). Thomas did not respond to the motion. West Hill filed a reply brief on November 24, 2025. (Doc. 19). Having considered the motion, the undersigned finds that West Hill's motion for summary judgment is due to be **GRANTED**.

## I. Legal Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the basis of its motion and identifying the portions of the record that it claims demonstrate that there is no genuine issue of material fact. *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (citing *Celotex*, 477 U.S. at 323). The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish there is a "genuine issue for trial." *Id.* at 1311–1312 (citing *Celotex*, 477 U.S. at 324). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255 (all justifiable inferences must be drawn in the non-moving party's favor). Any factual disputes will be resolved in Plaintiff's favor when sufficient competent evidence supports Plaintiff's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276–78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of the events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mtn. Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Even though Thomas has not filed a response opposing West Hill's motion for summary judgment, "summary judgment, even when unopposed can only be entered when 'appropriate.'" *United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1101 (11th Cir. 2004). Thus, the court must consider the motion on its merits and review the evidence in support of the motion to determine whether West Hill has met its burden under Rule 56.

## II. Summary Judgment Facts[4]

Thomas alleges that, at the time of the incident giving rise to this lawsuit, she was a resident of the West Hill facility. (Doc. 1-1 ¶ 15). West Hill likewise states that Thomas was a resident of the facility. (Doc. 16 at 1–2). According to Thomas, she was initially admitted to West Hill to receive skilled nursing and dietary services and long-term care. (Doc. 1-1 ¶ 15). Thomas claims that West Hill advertised itself to the public as "properly staffed, trained and equipped to provide appropriate and timely skilled nursing, dietary and rehabilitative care to patients." (Doc. 1-1 ¶ 20). She also alleges that West Hill operated pursuant to Medicare and Medicaid provider agreements and federal, state, and local health regulations. (Doc. 1-1 ¶ 21).

Thomas was admitted to West Hill on January 29, 2021. (Doc. 18-2). At the time of her admission, she had been diagnosed with conditions including, but not limited to, diabetes, hypertension, neuropathy, acid reflux, and congestive heart failure. (Doc. 1-1 ¶ 16; Doc. 18-2 at 2). The admission screener indicated that Thomas was admitted from her home because she did not have a caregiver there. (Doc. 18-2 at 2). In a series of checkboxes under "Orientation to Facility," the admission screener indicated that Thomas had verbalized or demonstrated use of bed controls and side rails on the bed. (Doc. 18-2 at 3). The screener further indicated that Thomas required extensive assistance to transfer from her bed, dress herself, and perform toileting. (Doc. 18-2 at 4). She required limited assistance in performing personal hygiene activities and required physical help with bathing. (Doc. 18-2 at 4–5). Thomas's admission screener indicated that she was bed-bound at the time of her admission. (Doc. 18-2 at 16).

[4] Because Thomas did not respond to the motion for summary judgment, the undersigned refers to the Complaint (doc. 1-1) to describe Thomas's allegations and to the evidentiary materials submitted by West Hill for facts supported by the Rule 56 record.

Thomas also underwent a Side Rail Evaluation (the "Evaluation") to determine her need for bed rails on the date of her admission. (Doc. 18-5). The Evaluation indicated that Thomas uses side rails on both sides of the bed as a mobility aid and recommended that side rails be used "at all times when resident is in bed." (Doc. 18-5 at 1). The Evaluation determined Thomas needed half-length side rails on both sides of the bed to "promote independence with bed mobility." (Doc. 18-2 at 16). The Side Rail Evaluation notes that West Hill obtained orders for side rails and updated Thomas's care plan. (Doc. 18-5 at 3). A Morse Fall Scale (the "Scale") was also completed for Thomas and signed on January 29, 2021. (Doc. 18-4). Her risk score was 15, which falls within the low-risk category. (Doc. 18-4 at 2–3). The Scale states that Thomas did not have a history of falling, was on bedrest, and required nurse assistance to get into and use a wheelchair. (Doc. 18-4 at 2). The Scale also states that Thomas was aware of her own mobility limits. (Doc. 18-4 at 2).

Thomas had other falls prior to the incident at issue. West Hill created a progress note on November 15, 2021, to document an incident that occurred on November 12, 2021. (Doc. 18-6). Thomas reported that while being transported by Medical Transport of Alabama, the driver removed her wheelchair footrests. (Doc. 18-6 at 2). Thomas reported that, because of this, while she was in the vehicle she slid between the wheelchair and the van seats, and the fire department was contacted to assist in righting her. (Doc. 18-6 at 2). Thomas was given 800 milligrams of ibuprofen every 12 hours for low back pain. (Doc. 18-6 at 2). Following this incident, Thomas underwent another Morse Fall Scale screening, and her fall risk score was upgraded to 40, which indicates a moderate fall risk. (Doc. 18-7). Thomas had another fall incident on March 6, 2022. (Doc. 18-9 at 2). Thomas indicated that she slid from her chair onto the floor. (Doc. 18-9 at 2). She did not report any pain from the fall, and the record indicates that Thomas did not require any

additional care related to the fall. (Doc. 18-9 at 2, 3). Thomas's physician progress notes categorize her as a fall precaution on November 2, 2021; March 15, 2022; April 11, 2022; May 23, 2022; June 8, 2022; July 7, 2022; August 31, 2022; October 12, 2022; November 15, 2022; and December 14, 2022. (Doc. 18-8). None of the treatment records provided assert that Thomas was not a fall risk. (*See* Doc. 18-8).

The incident at issue occurred on June 11, 2022. (Doc. 1-1 ¶ 18). On that date, a West Hill employee was assisting Thomas with a bath. (Doc. 1-1 ¶ 18; Doc. 16 at 2). Thomas asserts that she was lying in her bed, and the employee instructed or assisted her in turning to her right side. (Doc. 1-1 ¶ 18). She further claims that the employee pulled a bed pad out from underneath Thomas, and Thomas fell forward and off of her bed. (Doc. 1-1 ¶ 18). The medical records do not set out a narrative regarding how the injury occurred. Thomas was transferred to Princeton Medical Center for treatment. (Doc. 16 at 2; Doc. 18-10). Thomas sustained a closed fracture of the proximal end of the left tibia.[5] (Doc. 16 at 2). Thomas's treatment records indicate that her left leg was in a cast on July 7, 2022, and she was scheduled for a procedure on July 12, 2022. (Doc. 18-8 at 8). She asserts that she had surgery to repair the fracture and required placement of a rod. (Doc. 1-1 ¶ 19). Following the incident, Thomas claims she suffered an emotional fear of falling. (Doc. 1-1 ¶ 19). She also asserts that she suffered physical pain, emotional distress, and loss of dignity as a result of the incident. (Doc. 1-1 ¶ 17).

[5] The complaint alleges that Thomas fractured her right leg (Doc. 1-1 ¶ 19). The medical records submitted by West Hill reflect an injury to the left leg. , but the records (Doc. 18-10). Because the undersigned resolves West Hill's motion on the independent expert-testimony ground discussed below, it need not resolve this discrepancy.

## III. Analysis

Thomas asserts her claims under the theories of negligence and wantonness of a medical facility. Medical negligence is governed by the Alabama Medical Liability Act ("AMLA"). *See* Ala. Code §§ 6-5-480 *et seq*.; 6-5-540 *et seq*. Under the AMLA, medical liability is present when there is "[a] finding by a judge, jury, or arbitration panel that a physician, dentist, medical institution, or other health care provider did not meet the applicable standard of care, and that such failure was the proximate cause of the injury complained of, resulting in damage to the patient." Ala. Code § 6-5-481(9). According to the complaint, West Hill is "a skilled nursing/rehabilitation facility licensed by the Alabama Department of Public Health." (Doc. 1-1 ¶ 3). Under the AMLA, a "health care provider" includes a "hospital." Ala. Code § 6-5-542. Section 6-5-481(7), in turn, incorporates the statutory definition of "hospital," which includes long-term-care facilities such as skilled nursing facilities. *See Crowne Investments, Inc. v. Reid*, 740 So. 2d 400, 403 (Ala. 1999); *Rosemont, Inc. v. Marshall*, 481 So. 2d 1126, 1128 (Ala. 1985). Accordingly, West Hill qualifies as a health care provider under the AMLA.

Because West Hill is a health care provider, Thomas's claims of negligence and wantonness against it fall under the governance of the AMLA. *See* Ala. Code § 6-5-551 ("In any action for injury, damages, or wrongful death, whether in contract *or in tort*, against a health care provider for breach of the standard of care . . . the Alabama Medical Liability Act shall govern the parameters of discovery and all aspects of the action.") (emphasis added). Thomas's claims of negligent hiring, training, supervision, and firing employees are also governed by the AMLA. (Doc. 1-1 at 10). Section 6-5-551 provides that the AMLA governs all aspects of "any action for injury, damages, or wrongful death . . . against a health care provider for breach of the standard of care, whether resulting from acts or omissions in providing health care, or the hiring, training,

supervision, retention, or termination of care givers. . ." Ala. Code § 6-5-551; *See Ex parte Ridgeview Health Care Center, Inc.*, 786 So. 2d 1112 (Ala. 2000).

To establish liability for medical malpractice in Alabama, the plaintiff bears the burden at trial to prove: (1) the appropriate standard of care, (2) the provider's deviation from that standard, and (3) a proximate causal connection between the deviation and the plaintiff's injury. *Hauseman v. University of Alabama Health Services Foundation*, 793 So. 2d 730, 734 (Ala. 2000). In most cases, the plaintiff must prove their claim through testimony from a medical expert who is "similarly situated" to the provider whose acts or omissions gave rise to the action. *See* Ala. Code § 6-5-548(b), (c), (e); *Hauseman*, 793 So. 2d at 734; *Magee v. United States*, 2023 WL 4623611, at *3 (11th Cir. July 19, 2023); *see Univ. of Ala. Health Servs. Found. v. Bush*, 638 So. 2d 794, 802 (Ala. 1994). Thomas must prove that the alleged negligence probably caused, rather than only possibly caused, the plaintiff's injury. *Univ. of Ala. Health Servs. Found.*, 638 So. 2d at 802.

Under the AMLA, Thomas bears the ultimate burden of proof for establishing medical malpractice liability. *Hauseman*, 793 So. 2d at 734. West Hill can meet its initial Rule 56 burden by identifying portions of the record where there is no genuine issue of material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (11th Cir. 2018). In turn, West Hill can show that there is no genuine issue of material fact by showing where Thomas has failed to present evidence in support of an element of her case on which she bears the burden of proof. *See Celotex*, 477 U.S. at 322. This is precisely West Hill's argument. According to its motion for summary judgment, Thomas cannot meet her burden for showing medical malpractice liability because she has failed to present testimony from a qualified medical expert. (*See* Doc. 16). The Scheduling Order in this matter, entered based on the parties' report from a planning meeting, set the expert disclosure deadline for the plaintiff as June 6, 2025, and the deadline for completion of discovery as September 17, 2025.

(Doc. 11 ¶¶ 3–4). West Hill argues that, at the time of filing the motion for summary judgment, Thomas had not disclosed an expert in the case or come forward with expert evidence. (Doc. 16 at 3). Thomas did not respond to the motion for summary judgment and has not come forward with any expert testimony or other expert evidence.

The reasoning behind the requirement for expert testimony under the AMLA is that determining proximate cause in a medical-malpractice case is generally beyond the scope of knowledge of the average juror. *Peterson v. Triad of Alabama, LLC, d/b/a Flowers Hospital*, 344 So. 3d 340, 345 (Ala. 2021) (citing *Golden v. Stein*, 670 So. 2d 904, 907 (Ala. 1995); Charles W. Gamble, *McElroy's Alabama Evidence*, § 127.01(5)(c), p. 333 (4th ed. 1991)). An exception to the requirement for expert testimony can be made when "the lack of care is so apparent as to be within the ken of the average layman." *Peterson*, 344 So. 3d at 345. The Supreme Court of Alabama reformulated the exceptions in *Ex parte Healthsouth Corp*., 851 So. 2d 33 (Ala. 2002). First, cases in which "want of skill or lack of care is so apparent … as to be understood by a layman, and requires only common knowledge and experience to understand it, such as when a sponge is left in, where, for example the wrong leg is operated on, or, as here, where a call for assistance is completely ignored for an unreasonable period of time." *Peterson*, 344 So. 3d at 345 (quoting *Ex parte HealthSouth Corp.*, 851 So. 2d 33 (Ala. 2002) (internal quotations omitted). Second, an exception to the requirement for expert testimony can be made when the plaintiff relies on "a recognized standard or authoritative medical text or treatise" to support their allegations. *Id*. (quoting *Anderson v. Alabama Reference Lab'ys.*, 778 So. 2d 806 at 811 (Ala. 2000)).

As to cases in which the lack of care is so apparent that it can be understood by the average layman, the Alabama Supreme Court has also recognized a distinction between medical care and "custodial" or "routine hospital" care. *See Callens v. Episcopal Foundation of Jefferson County*,

422 So. 3d 88 at 94 (Ala. 2025) (citing *HealthSouth Corp.*, 851 So. 2d at 39). While professional nursing or professional hospital care requires expert testimony as to the standard of care, the standard of care for "nonmedical, administrative, ministerial or routine care in a hospital need not be established by expert testimony because the jury is competent from its own experience to determine and apply such a reasonable-care standard." *Id.* at 95–96 (citing *HealthSouth Corp.*, 851 So. 2d at 39) (quoting *McGraw v. St. Joseph's Hospital*, 488 S.E.2d 389, 396 (W.Va. 1997)).

Because Thomas did not respond to the motion for summary judgment, the undersigned draws her allegations from the Complaint alone. Thomas alleges that West Hill failed to meet the standard of care owed her by failing to:

- perform appropriate and timely assessments and reviews of her acuity, care needs, and physical and psychosocial condition;
- assess and monitor Thomas's fall risk and fall prevention needs;
- create and implement an appropriate care plan for Thomas's fall risk and fall prevention needs;
- timely and appropriately communicate with Thomas's doctor and family;
- provide Thomas with a safe environment;
- properly hire, train, supervise, and fire nursing, dietary, and rehabilitative staff; and
- deliver medical and nursing care to support Thomas's physical, mental, and psychological well-being.

(Doc. 1-1 ¶ 25). Thomas further alleges that, but for the foregoing actions and omissions, she would not have suffered the damages she alleges in this action. (Doc. 1-1 ¶¶ 26–27). Thomas reasserts the above alleged failures in her wantonness claim against West Hill. (Doc. 1-1 ¶ 31).

Thomas has presented no evidence from a similarly situated expert to support these assertions, explain how West Hill's conduct deviated from the applicable standard of care, or established that any such deviation proximately caused her injuries. Thomas also did not respond to the motion for summary judgment to explain if or how her claims are subject to the exceptions for providing expert testimony under the AMLA. To fall within the expert testimony exception, the lack of care asserted by Thomas must be so apparent as to fall within the common sense knowledge of the average juror or her allegations must be supported by a recognized medical text or treatise. *See Peterson*, 344 So. 3d at 345.

Thomas's allegations center around assessing her condition, creating and following care plans, and communicating with Thomas' family. (*See* Doc. 1-1 ¶¶ 25, 31). These alleged deviations from the standard of care do not rise to the level of the examples given in *Ex parte HealthSouth* of "a sponge [being] left in . . . the wrong leg [being] operated on, or . . . a call for assistance [being] completely ignored for an unreasonable period of time." 851 So. 2d at 39. Furthermore, Thomas does not cite to a recognized medical text or treatise that could bring her allegations within the exception set out in *Anderson v. Alabama Reference Lab'ys*. 778 So. 2d at 811.

Thomas does not make a direct argument that the care she was receiving at the time of incident giving rise to this suit was custodial care that would be subject to the "common knowledge" exception set out in *HealthSouth*. (*See* Doc. 1-1). However, the undersigned will address that potential argument in an abundance of caution. Thomas alleges that when she fell, she was in the process of being bathed or cleaned by a West Hill Employee. (Doc. 1-1 ¶ 18; Doc. 16 at 2). According to Thomas, she was lying in her bed, and the employee instructed or assisted her in turning to her right side. (Doc. 1-1 ¶ 18). Thomas asserts that the employee then pulled a

bed pad out from underneath her and she fell forward off her bed. (Doc. 1-1 ¶ 18). Again, Thomas does not specify in her complaint how the actions taken by the West Hill employee were allegedly below the standard of care, nor does she allege that the action of cleaning or bathing her was "nonmedical, administrative, ministerial or routine care" that would not require expert testimony. *See Callens*, 422 So. 3d at 95–96. However, there are instances in which something as seemingly simple as bathing a patient constitutes medical care. See, for example, *Callens v. Episcopal Foundation of Jefferson County*, in which a patient who had previously had hip surgery was injured during a bath. 422 So. 3d 88 (Ala. 2025).

In *Callens*, the Alabama Supreme Court determined that, though bathing the plaintiff appeared to be, on its surface, a mundane and routine task, expert testimony would be required "to illuminate whether the St. Martin's nurses should have performed the care and treatment being given to Callens in a different manner and whether such differences would have prevented Callens from sustaining another injury to her left hip." 422 So. 3d at 97. Similarly, Thomas was bed-bound, required physical assistance with bathing and transfers, and had been identified as a fall precaution. Determining the manner in which nursing staff should have positioned and handled Thomas while bathing her- including whether and how a bed pad should have been moved- requires knowledge of the care appropriate for a patient with those limitations and fall risks. As in *Callens,* that determination is not one a lay juror could reliably make without expert testimony concerning the applicable standard of care. Without such testimony, Thomas cannot establish either the applicable standard of care and breach or a proximate causal connection between any breach and her injury.

Thomas has not met her burden to show that there is a genuine dispute of material fact as to whether West Hill committed medical malpractice under the AMLA. Because West Hill is a

health care provider, both Thomas's negligence and wantonness claims are governed by the AMLA. Both claims fail because Thomas has not presented the expert evidence necessary to establish the applicable standard of care, a breach of that standard, and proximate causation. Accordingly, West Hill's motion for summary judgment is due to be granted.[6]

## IV. Conclusion

For the reasons set out herein, summary judgment is due to be **GRANTED** in favor of Birmingham Health and Rehab, LLC, referred to herein as West Hill, on Thomas's negligence and wantonness claims. (Doc. 15). Thomas's claims of negligence and wantonness against West Hill are **DISMISSED WITH PREJUDICE**. The fictitious defendants are **DISMISSED** from this action. A final order of dismissal will be entered separately.

DONE this 30th day of September, 2026.

**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE

[6] West Hill argues in its brief supporting its motion for summary judgment that, even if Thomas showed that the fall giving rise to this suit was due to a breach of the standard of care, there is no evidence showing proximate cause between the fall and Thomas's claimed injury. (Doc. 16 at 11–12). However, because Thomas has not supplied the expert testimony to meet her burden under the AMLA, the undersigned need not reach this argument.